UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

YOANIS GARCIA-RAMOS,

Petitioner,

v.                                                    CAUSE NO. 3:26-CV-774-CCB-SJF

BRIAN ENGLISH,

Respondent.

**OPINION AND ORDER**

Immigration detainee Yoanis Garcia Ramos, representing himself, filed a petition

for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully

confined in violation of the laws or Constitution of the United States. ECF 1. The

respondents have answered the petition, and Garcia-Ramos has filed a reply. ECF 12,

ECF 13. The petition is ready to be decided.

BACKGROUND

Garcia-Ramos is a Cuban citizen who entered the United States in 2011. ECF 4 at

2. In 2015, he was convicted of fraud in Missouri. *Id.* On November 12, 2015, an

immigration judge ordered him removed to Cuba, but he was released on conditions of

supervision after ninety days of detention due to an inability to remove him. *Id.* On

April 30, 2026, Immigrations and Customs Enforcement (ICE) detained him again,

notifying him that it had obtained a travel document and that his removal would occur

no later than July 29, 2026. ECF 12-1 at 2-3. Upon his detention, an ICE officer verbally

told him that he would be removed to Cuba. ECF 4 at 3. Garcia-Ramos is currently held

at the Miami Correctional Facility. *Id.* at 2.

SUBJECT MATTER JURISDICTION

The respondent first argues that the court lacks subject matter jurisdiction over

Garcia-Ramos' habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has

thoroughly considered its jurisdiction to review post-removal-order immigration

detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*,

No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.);

*Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29,

2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the respondent first argues that Garcia-

Ramos' detention is lawful under 8 U.S.C. § 1231 because the statute authorizes

detention pending execution of a removal order. However, beyond the "removal

period,"[1] which for Garcia-Ramos ended in 2016, continued detention is authorized

only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is

reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal

is no longer reasonably foreseeable, continued detention is no longer authorized by

statute."). The Supreme Court has instructed that once removal is not reasonably

---

[1] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

2

foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Garcia-Ramos has not been in detention for longer than six months. He was held for ninety days following the issuance of the removal order in 2016, and his immediate span of detention spans two-and-a-half months. Consequently, his detention remains presumptively reasonable under *Zadvydas*. This raises the question of what the consequences are when there is an intact presumption of reasonableness. The federal courts are split on whether an intact presumption is fatal to a petitioner's claim or whether a petitioner is entitled to an opportunity to rebut the presumption. *Compare Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 373-77 (D. Md. 2025) (rebuttable presumption); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-98 (D.N.J. 2025)

(rebuttable presumption); *Cesar v. Achim*, 542 F. Supp. 2d 897, 902-05 (E.D. Wis. 2008) (rebuttable presumption) *with Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (affirming dismissal of claim as premature because "Okpoju had not yet been in custody longer than the presumptively reasonable six-month post removal order period."); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*.").

However, the court need not resolve this dispute because Garcia-Ramos would not prevail on this claim even if the presumption is rebuttable. The courts finding that the presumption of reasonableness is rebuttable have explained the consequences of the intact presumption as follows:

> [T]he scheme operates merely to shift and alter the burden of proving whether or not detention pursuant to § 1231(a)(6) is permissible. Within the six-month window, the detainee must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the government must then disprove. And as time passes, the burden on the government increases accordingly. Thus, the presumption scheme merely suggests that the burden the detainee must carry within the first six months of postorder detention is a heavier one than after six months has elapsed.

*Cesar*, 542 F.Supp.2d at 903. Stated otherwise, the burden of proof rests entirely with Garcia-Ramos because the presumption remains intact.

To Garcia Ramos' point, the court, too, has some questions about the Warden's submission given that he does not identify the removal country for which travel documents were obtained, and, given that the government has detained Garcia-Ramos

4

for two-and-a-half months despite purportedly having a travel document in hand. However, at this time, the length of detention is presumptively reasonable, and the burden of proof rests with Garcia-Ramos to show that his removal will not occur within the reasonably foreseeable future. The court further observes that the government's stated deadline for removal of July 29, 2026, has not yet expired.

Garcia-Ramos has not satisfied this burden even setting aside the specific travel document identified by the government. Though he contends that neither Cuba nor Mexico will accept him for removal, he concedes that Cuba accepted Cuban citizens with criminal records, like him, in 2025.[2] ECF 4 at 3-4. He also had not provided any evidence that the current relations between the United States and Cuba have since altered Cuba's willingness to accept its citizens for removal.

Further, Garcia-Ramos contends that his lack of consent forecloses his removal to Mexico, but it is unclear how he could comply with the obligation to cooperate with removal efforts while also withholding his consent for removal. *See Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003) (holding that an immigration detainee cannot prevail under *Zadvydas* if the detainee refuses to cooperate with removal efforts); 28 U.S.C. § 1231(a)(1)(C) (extending the removal period if a detainee refuses to cooperate with

---

[2] Specifically, Garcia-Ramos contends that in 2025, the government detained 419 Cuban citizens, that Cuba accepted 138 of them, and that only 32 of the accepted individuals had a criminal conviction like Garcia-Ramos. He also contends that there is only an 8% chance that Cuba will accept him, but this calculation is flawed. There is no indication as to how many of the detained Cuban citizens had a criminal record, and, as a result, the percentage of Cuban citizens with criminal records that Cuba accepted for removal cannot be precisely calculated. To the contrary, the potential range spans widely from 10% (if all unaccepted individuals had criminal convictions) to 100% (if Cuba accepted all individuals with criminal convictions). Indeed, it is entirely unclear from this limited data whether a criminal conviction was even a material factor in Cuba's decision-making process.

removal efforts). The court might be reluctant to find that a detainee has failed to cooperate with removal efforts if he had a plausible fear of persecution or torture and had not been afforded an opportunity to be heard on it, but, here, Garcia-Ramos only vaguely alleges that "he fears he would be tortured there." *Id.* at 4. Additionally, Garcia-Ramos does not address why he could not be removed to any other country, despite acknowledging efforts to remove him to other countries as a possibility. The government may not have notified him of its intent to remove him to a third country, but they remain within the six-month period of presumptive reasonableness. As a result, this potential administrative delay would not persuade the court that such removal is not reasonably foreseeable.

Garcia-Ramos also argues that he is entitled to habeas relief because the government did not provide him with notice of the reasons for revocation or afford him an initial informal interview and because the government did not make an individualized determination that his removal was reasonably foreseeable. However, the Warden submitted a copy of the notice of reasons for revocation, indicating that ICE had determined that it had the ability to execute Garcia-Ramos's removal because it had obtained a travel document on his behalf. ECF 12-1 at 2-3. Though Garcia-Ramos questions the validity and existence of such a travel document, the government has clearly stated its reasons for revocation. The revocation notice also indicates that the government afforded Garcia-Ramos an initial informal interview, and the notice is also signed by Garcia-Ramos.

In reply, Garcia-Ramos contends only that the notice of revocation incorrectly cites 8 C.F.R. § 241.4 as the regulation governing revocation of supervised release instead of 8 C.F. § 241.13. However, these regulations cross-reference each other, and both of these regulations pertain to revocation of supervised release to some degree. Most notably, the notice of revocation specifically cites 8 C.F.R. § 241.4(l), which is aptly titled "Revocation of Release" and details the process for revoking supervised release. Because Garcia-Ramos has not demonstrated that the government has failed to comply with federal regulations in connection with the revocation of his supervised release, this claim is not a basis for habeas relief.

In the reply brief, Garcia-Ramos also asks the court to consider appointing counsel. The Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), permits the appointment of counsel in a habeas corpus case, if "given the difficulty of the case and the litigant's ability, [he] could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have . . . a reasonable chance of winning with a lawyer at his side." *Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997).

Garcia-Ramos represents that he is unable to obtain counsel on his own, but he has not shown that he has made any attempt at doing so, nor has he shown that he is indigent. Further, the court cannot find that he would have a reasonable chance of success even with appointed counsel. There appears to be no substantial legal or factual basis for Garcia-Ramos' regulatory violation claims, and it is also unclear how he could prevail on his claim under *Zadvydas* while he remains within the six-month period of presumptive reasonableness. Therefore, the court denies the request for counsel.

As a final matter, the court observes that "for detention to remain reasonable, as the period of prior postremoval [order] confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). While Garcia-Ramos may not be entitled to habeas relief now, it does not prevent him from seeking habeas relief at some later date if the government continues to detain him for a significant period of time.

For these reasons, the court **DENIES** the habeas petition (ECF 2) and **DIRECTS** the clerk to close this case.

SO ORDERED on July 13, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT